**NEW KIDS ON THE BLOCK, a Massachusetts general partnership consisting of Donnie Wahlberg, Danny Wood, Jonathan Knight, Jordan Knight and Joe McIntyre, Dick Scott Entertainment, Inc., a New York corporation, Info–Tainment, Inc., a Pennsylvania corporation, Winterland Concessions Co., a California corporation, and Big Step Productions, Inc., a New York corporation, Plaintiffs,**

v.

**NEWS AMERICA PUBLISHING, INC., a Delaware corporation dba Star Magazine, Defendant.**

**NEW KIDS ON THE BLOCK, et al., Plaintiffs,**

v.

**GANNETT SATELLITE INFORMATION NETWORK, INC., a Delaware corporation dba USA Today, Inc., Defendant.**

**Nos. CV 90–1376 WJR (JRX), CV 90–1378 WJR (JRX).**

United States District Court, C.D. California.

Sept. 7, 1990.

Pillsbury, Madison & Sutro by Philip Heller, Los Angeles, Cal., for plaintiffs New Kids On The Block, et al.

O'Melveny & Myers by Charles Diamond, Los Angeles, Cal., for defendant Gannett Satellite.

Gibson, Dunn & Crutcher by Rex S. Heinke, Los Angeles, Cal., for defendant News America Pub., etc.

## MEMORANDUM DECISION AND ORDER RE SUMMARY JUDGMENT

REA, District Judge.

The Court has reviewed and considered the moving and opposing papers, the record of the case, the arguments of counsel, the applicable authorities and good cause appearing therefore:

IT IS HEREBY ORDERED that the defendants' motions for summary judgment are GRANTED and the plaintiffs' motions for summary judgment are DENIED.

 The issue before the Court is whether the First Amendment provides immunity to defendants from plaintiffs' causes of action for trademark infringement and misappropriation. The Court concludes that the test articulated in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir.1989), is applicable in situations where claims of trademark infringement might encroach on First Amendment rights. As such, the First Amendment provides immunity to defendants in this case unless their use of the plaintiffs' trademark was wholly unrelated to news gathering and dissemination, misleading as to content, or falsely and explicitly denoted authorship, sponsorship, or en-

dorsement by the New Kids on the Block. Similarly, the appropriate test for misappropriation claims under California law is that the First Amendment provides immunity unless the defendants' use of the New Kids on the Block name and likeness constituted pure commercial exploitation and was wholly unrelated to news gathering and dissemination. The Court finds that the defendants were involved in the constitutionally protected activity of news gathering and dissemination when they conducted a poll regarding the New Kids on the Block with 900 number technology. Plaintiffs have not raised a genuine issue of material fact that would strip defendants of First Amendment protection. Therefore, the First Amendment bars plaintiffs' trademark infringement claims and misappropriation claims.

## BACKGROUND

Defendants Gannett Satellite Information (hereafter USA Today) and News America Publishing (hereafter Star Magazine) both used a 900 number service in their publications to conduct a poll relating to one of today's hottest pop music groups—New Kids on the Block (New Kids). 900 number services can provide recorded information, allow callers to engage in conversation on a party line, or record information by punching in the appropriate number on a touch tone phone. Callers to 900 number services are charged a fee for participating in the telephone service.

The March 6, 1990 edition of Star Magazine included two articles, with photographs, about the New Kids. The "article" in question asked, "Now which kid is the sexiest?" and asked the readers to call a

900 number to cast their vote at a charge of 95 cents per minute. When a reader called Star Magazine's 900 number to name the sexiest New Kid, Star Magazine then solicited the caller's participation in "Star Magazine's entertainment trivia game," a separate 900 number service. Star Magazine has presented evidence that the results of this poll were never published because of this litigation.

In an "article" run on February 6, 1990, USA Today announced that it would conduct a survey on the New Kids in connection with a review of New Kids' Disney Channel concert and a story regarding the unveiling of the New Kids doll collection. The survey was conducted February 7, 1990, and included a logo asking "Who's the Best on the Block?" The survey asked "Which of the five is your fave? Or are they a turn off?", listed the 900 number to call, and stated that the results would be published in Friday's Life section. Callers were charged 50 cents per minute. USA Today's February 9, 1990 Life Section published a page-one story reporting the public's preferences among the New Kids' members.

Plaintiffs brought eleven causes of action against Star Magazine and USA Today alleging federal and state statutory and common law infringement; dilution [1] of the plaintiffs' trademark, service mark and trade name; and commercial misappropriation. The federal and state statutory and common law infringement claims are based on the theory that defendants disseminated false or misleading information to the public which was likely to confuse the public with respect to the relationship between the plaintiffs' and the defendants' 900 number services.[2] The misappropriation claims are based on the theory that the defen-

1. It is in dispute whether or not plaintiffs have alleged a cause of action for dilution. Plaintiffs did not specifically cite California Business and Professions Code § 14330, but stated in paragraph 6 of the complaint that defendants "threaten to dilute" plaintiffs' mark. Even if this is sufficient to state a claim for dilution, the First Amendment analysis applies equally to this claim.

2. The following causes of action fit under this theory: common law trademark infringement

(First Claim); Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (hereafter Lanham Act) false advertising (Second Claim); Lanham Act false designation of origin (Third Claim); Lanham Act unfair competition (Fourth Claim); trade name infringement (Seventh Claim), false advertising under Cal.Bus. & Prof.Code § 17200 (Eighth Claim); and unfair competition under Cal.Bus. & Prof.Code §§ 17200 and 17500 (Ninth Claim).

dants' reference to the New Kids in announcing the 900 number surveys constituted a misappropriation of their publicity rights.[3]

Plaintiffs state that they have been using the New Kids mark since 1986 to identify the group and their goods and services. Among the New Kids' services under the New Kids mark are two 900 number telephone hotlines. Plaintiffs claim that the use by Star Magazine and USA Today of the 900 number to conduct a survey was a commercial, profit oriented venture that infringed on the New Kids trademark. Plaintiffs argue that defendants' New Kids surveys were disguised advertisements for the sale of a collateral commercial product —namely, the 900 number service. Plaintiffs assert that defendants could have used an 800 number, but instead used a 900 number to commercially misappropriate the goodwill created by the New Kids and to capitalize on the public's familiarity with the goods and services identified by the New Kids mark. Plaintiffs have moved for summary judgment based on the allegation that defendants have clearly infringed on plaintiffs' intangible property rights and are not protected by the First Amendment.

Defendants Star Magazine and USA Today bring their motions for summary judgment mainly on the grounds that plaintiffs' claims are barred, as a matter of law, because the use of the 900 numbers constitutes news gathering and dissemination, and therefore, is constitutionally protected under the First Amendment.

## DISCUSSION

The issue of whether the First Amendment bars the plaintiffs' causes of action is dispositive. Because the Court concludes that the First Amendment provides immunity to defendants, the Court need not address whether the New Kids have established, as a matter of law, defendants' liability for infringement or misappropriation.

### I. *Trademark Infringement*

#### A. *Standard*

Plaintiffs assert that the proper test to evaluate the New Kids' intangible property rights in relation to the First Amendment is that outlined in *Lloyd v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972). In *Lloyd*, the Court addressed whether the First Amendment rights of protesters were violated when an owner of a shopping center prohibited all distribution of pamphlets on the premises. Initially, the Court found that the restriction on the distribution of pamphlets was content neutral. Next, the Court balanced the protesters' First Amendment rights against a property owner's right to exclude others from an owner's property. The Court found that property rights need not "yield to the exercise of First Amendment rights under circumstances where adequate alternative avenues of communication exist." *Id.* at 567, 92 S.Ct. at 2228. Plaintiffs argue that alternative methods existed for Star Magazine and USA Today to conduct surveys that would not constitute profit oriented commercial vehicles that would infringe on the New Kids trademark; for example, 800 number services, regular telephone services, letters, post cards, or telegrams were possible alternative methods. Plaintiffs state that enforcement of their property rights would not involve censorship in that plaintiffs do not want to prevent or limit reports or commentary on the New Kids. Plaintiffs characterize their case as follows: "This is not a case about communication; it is a case about remuneration. Communication is protected by the First Amendment; profit is not."

In contrast, defendants urge the Court to adopt the analysis outlined in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir.1989). In *Rogers*, plaintiff, Ginger Rogers, brought an action against the producers and distributors of the motion picture "Ginger and

---

**3.** The following causes of action fit under this theory: commercial misappropriation under Cal.Civ.Code § 3344 (Fifth Claim); common law misappropriation (Sixth Claim); and interference with prospective economic advantage (Tenth Claim). The Eleventh Claim for the remedy of a constructive trust is dependent on the viability of the other ten causes of action and does not stand on its own.

Fred," alleging violations of the Lanham Act and infringement of her common law rights of publicity and privacy. The district court dismissed plaintiff's claims on summary judgment and the Second Circuit upheld the dismissal, although for different reasons. The appellate court held that the First Amendment did not provide absolute immunity to works of artistic expression because of the legitimate government concern regarding consumer deception. *Id.* at 997. Nevertheless, "[t]hough the First Amendment concerns do not insulate titles of artistic works from all Lanham Act claims, such concerns must nonetheless inform our consideration of the scope of the Act as applied to claims involving such titles." *Id.* at 998 (footnote omitted). The court concluded that the Lanham Act should be read narrowly so as not to unduly intrude on First Amendment values. *Id.* The court specifically rejected the plaintiff's request to apply the "no alternative avenues of communication" standard developed in *Lloyd v. Tanner,* 407 U.S. 551, 566–67, 92 S.Ct. 2219, 2227–28, 33 L.Ed.2d 131 (1972) because this standard did not "sufficiently accommodate the public's interest in free expression." *Rogers,* 875 F.2d at 999. Thus, the court adopted a balancing test stating that the Lanham Act "should be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression." *Id.* Specifically, the Court stated the test as follows: "In the context of allegedly misleading titles using a celebrity's name, that balance will normally not support application of the Act unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work." *Id.* (footnote omitted). Although *Rogers*

concerned First Amendment values in the context of artistic expression, the First Amendment plays the same central role regarding news gathering and dissemination. In *Branzburg v. Hayes,* 408 U.S. 665, 681, 92 S.Ct. 2646, 2656, 33 L.Ed.2d 626 (1972), the Court stated, "We do not question the significance of free speech, press, or assembly to the country's welfare. Nor is it suggested that news gathering does not qualify for First Amendment protection; without some protection for seeking out the news, freedom of the press could be eviscerated." In *Daily Herald Co. v. Munro,* 838 F.2d 380, 384 (9th Cir.1988), the Ninth Circuit recognized that "the First Amendment protects the media's right to gather news" and held that exit polling is speech protected by the First Amendment.[4] The Ninth Circuit also rejected the argument that news gathering was closer to commercial speech, and therefore, worthy of less constitutional protection:

The state also argues that exit polling is closer to commercial speech than political speech, and therefore less deserving of constitutional protection. A profit motive by the media plaintiffs is irrelevant to the inquiry of whether the content of their speech is political or commercial. *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations,* 413 U.S. 376, 385, 93 S.Ct. 2553, 2558, 37 L.Ed.2d 669 (1973). Newsgathering is not commercial speech; commercial speech " 'does "no more than propose a commercial transaction." ' " *Bolger v. Youngs Drug Products Corp.,* 463 U.S. 60, 66, 103 S.Ct. 2875, 2880, 77 L.Ed.2d 469 (1983) (quoting *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 762, 96 S.Ct. 1817, 1825, 48 L.Ed.2d 346 (1976).

---

**4.** *See also Nicholson v. McClatchy Newspapers,* 177 Cal.App.3d 509, 223 Cal.Rptr. 58 (1986) ("First Amendment therefore bars interference with this traditional function of a free press in seeking out information by asking questions."); *Clean–Up '84 v. Heinrich,* 759 F.2d 1511 (11th Cir.1984) (holding that a state statute interfering with the news gathering activity of taking voter exit polls was unconstitutional). The Court notes that the First Amendment does not pro-

vide absolute immunity. *See Dietemann v. Time, Inc.,* 449 F.2d 245, 249 (9th Cir.1971) (holding that "The First Amendment has never been construed to accord newsmen immunity from torts or crimes committed during the course of newsgathering. The First Amendment is not a license to trespass, to steal, or to intrude by electronic means into the precincts of another's home or office.").

*Id.* at 384 n. 4. Therefore, the Lanham Act will not prohibit the use of the New Kids trademark unless the defendants explicitly and falsely denoted authorship, sponsorship, or endorsement by the New Kids or explicitly mislead as to content.

### B. *Application*

■ Both USA Today and Star Magazine have presented evidence that the use of the New Kids trademark was related to news gathering and dissemination. News worthiness is broadly defined and both Star Magazine and USA Today have represented that they conducted the 900 number survey to find out which member of the New Kids was the public's favorite and then publish those results. USA Today did in fact publish the results. Star Magazine has presented evidence of their draft article and stated that the article reflecting the survey's results was withheld because this lawsuit was initiated.[5] Thus, to raise a genuine issue of fact, plaintiffs have the burden of providing some evidence that the defendants' use of the New Kids trademark was misleading as to content or that defendants falsely and explicitly denoted authorship, sponsorship, or endorsement by the New Kids.

■ Plaintiffs have not alleged that the use of the 900 number was misleading as to content or that Star Magazine and USA Today explicitly misrepresented that the New Kids sponsored or endorsed the

service. Rather, plaintiffs rely on the theory of implicit endorsement. The Court finds that the Lanham Act does not apply unless the defendants falsely and explicitly represented that New Kids sponsored or endorsed the use of the 900 number. The risk that some people might think that the New Kids implicitly endorsed or sponsored the Star Magazine's and USA Today's 900 number services is outweighed by the danger of restricting news gathering and dissemination. *See Rogers,* 875 F.2d at 1000.[6]

The Court finds that the First Amendment provides immunity to defendants on plaintiffs' federal and state trademark infringement claims, and thus, these claims do not raise a genuine issue of fact that requires submission to the trier of fact. The Court GRANTS defendants' motions for summary judgment as to claims one, two, three, four, seven, eight and nine.

### II. *Misappropriation*

"The California Supreme Court has subjected the 'right of publicity' under California law to a narrowing interpretation which accords with First Amendment values." *Cher v. Forum Int'l, Ltd.,* 692 F.2d 634, 638 (9th Cir.1982) (citing *Guglielmi v. Spelling–Goldberg Productions,* 25 Cal.3d 860, 873, 603 P.2d 454, 461–62, 160 Cal. Rptr. 352, 359–60 (1979) (Bird, J. concurring)).[7] The defendants' position is that their use of the New Kids name and likeness is protected by the First Amendment

---

5. Star Magazine's case is somewhat distinguishable from USA Today's in that Star Magazine took the opportunity to solicit the caller's participation in "Star Magazine's entertainment trivia game," a separate 900 number service. Notwithstanding this fact, the Court still finds Star Magazine's activity within the broad scope of constitutional protection afforded to First Amendment activities.

6. In *Cher v. Forum Int'l, Ltd.,* 692 F.2d 634, 639–40 (9th Cir.1982), *cert. denied,* 462 U.S. 1120, 103 S.Ct. 3089, 77 L.Ed.2d 1350 (1983), the court upheld the trier of fact's finding that Cher had demonstrated implied endorsement and stated a cause under an appropriation of publicity theory. *Cher* is distinguishable because it was an appropriation of publicity case versus a Lanham Act case. Additionally, even if allegations of implied endorsement are sufficient under the Lanham Act, plaintiffs have not raised a

genuine issue of fact. In *Cher,* the defendants falsely stated that Cher had told its publication things that it wouldn't tell others. In contrast, the New Kids' claim of implied endorsement rests on the fact that the poll announcement was in the defendants' publications and this mere relationship is sufficient to state a cause of action for implied endorsement. This is insufficient as a matter of law. *See Universal City Studios, Inc. v. Ideal Publishing Corp.,* 195 U.S. P.Q. 761 (S.D.N.Y.1977).

7. Additionally, the California Supreme Court has interpreted the California Constitution as providing greater protection to speech than does the First Amendment. *See Robins v. Pruneyard Shopping Center,* 23 Cal.3d 899, 592 P.2d 341, 153 Cal.Rptr. 854 (1979), *aff'd,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980) (declining to adopt the "alternative avenue of communication" test developed in *Lloyd v. Tanner* ).

unless such use is wholly unrelated to constitutionally protected news gathering and dissemination.[8] In *Midler v. Ford Motor Co.*, 849 F.2d 460 (9th Cir.1988), the court discussed the First Amendment in the context of whether defendant could use an imitation of plaintiff's voice to advertise merchandise.

The First Amendment protects much of what the media do in the reproduction of likenesses or sounds. A primary value is freedom of speech and press. *Time, Inc. v. Hill*, 385 U.S. 374, 388 [87 S.Ct. 534, 542, 17 L.Ed.2d 456] (1967). The purpose of the media's use of a person's identity is central. If the purpose is "informative or cultural" the use is immune; "if it serves no such function but merely exploits the individual portrayed, immunity will not be granted." Felcher and Rubin, "Privacy, Publicity and the Portrayal of Real People by the Media," 88 Yale L.J. 1577, 1596 (1979).

*Id.* at 462. Here, USA Today's and Star Magazine's use of the New Kids name occurred in the context of a protected First Amendment activity—gathering information for dissemination to the public. Defendants claim that they were using the New Kids name in a descriptive capacity. California courts have specifically allowed incidental commercial exploitation of a public figure's name and likeness in the context of a publication's advertising activities. *See, e.g., Guglielmi*, 25 Cal.3d at 873, 603 P.2d at 462, 160 Cal.Rptr. at 360. Total commercial exploitation is not allowed. *Midler*, 849 F.2d 460.

■ Plaintiffs argue that the defendants' method of gathering information constitutes a collateral commercial enterprise which takes the defendants' use of the New Kids name outside of the protection of the First Amendment. Plaintiffs have raised an interesting issue in that the 900 number services could be construed as a commercial enterprise as distinguishable from the commercial enterprise of running the publication itself. Nevertheless, the fact that the use of the New Kids name was descriptive and related to the constitutionally protected activity of news gathering and dissemination and not merely commercial exploitation compels the conclusion that the activity is constitutionally protected.

■ Importantly, First Amendment protection does not hinge upon whether or not an activity is profitable or unprofitable. In *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501–02, 72 S.Ct. 777, 780, 96 L.Ed. 1098 (1952), the Supreme Court found as follows:

> It is urged that motion pictures do not fall within the First Amendment's aegis because their production, distribution, and exhibition is a large-scale business conducted for private profit. We cannot agree. That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment. We fail to see why operation for profit should have any different effect in the case of motion picture.

The California Supreme Court has also rejected the relevance of a profit motive when First Amendment rights were involved in a misappropriation case. In *Guglielmi v. Spelling–Goldberg Productions*, 25 Cal.3d 860, 160 Cal.Rptr. 352, 603 P.2d 454 (1979), the court stated that:

> The First Amendment is not limited to those who publish without charge. Whether the activity involves newspaper publication or motion picture production, it does not lose its constitutional protection because it is undertaken for profit. . . . The fact that respondents sought to profit from the production and exhibition of a film utilizing Valentino's name

---

**8.** Additionally, defendants claim that California Civil Code § 3344(d) expressly exempts from liability the use of a name or likeness in connection with a news report, and hence, plaintiffs' fifth and sixth causes of action are barred. Plaintiffs assert that § 3344(d) provides no

more protection than that of the First Amendment. As the Court concludes that plaintiffs' causes of action are barred by the First Amendment, the Court need not reach a decision as to the scope of § 3344(d).

and likeness is not constitutionally significant.

25 Cal.3d at 868–69, 160 Cal.Rptr. 352, 603 P.2d 454 (citations omitted); *see also Daily Herald Co. v. Munro,* 838 F.2d 380, 384 (9th Cir.1988) (stating profit motive irrelevant on issue of whether speech political or commercial).

Finally, this is not a case that would fall under the rule created by the United States Supreme Court in *Zacchini v. Scripps-Howard Broadcasting Co.,* 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977). In *Zacchini,* the Court determined that a newscast's broadcast of plaintiff's entire 15 second act of being shot out of a cannon infringed on plaintiff's right to publicity. The Court weighed defendant's First Amendment rights against plaintiff's right to earn a livelihood. The Court found that "[t]he broadcast of a film of petitioner's entire act poses a substantial threat to the economic value of that performance." *Id.* at 575, 97 S.Ct. at 2857. Because there is no similar substantial threat to the economic value of the New Kids name, the Court should not adopt the *Zacchini* rule in this case.

The Court finds, as a matter of law, that the defendants' use of the New Kids name and likeness was related to news gathering and not mere commercial exploitation. Thus, the First Amendment immunizes USA Today and Star Magazine from plaintiffs' misappropriation claims. The Court GRANTS defendants' motions for summary judgment as to claims five, six, and ten. Consequently, plaintiffs' eleventh cause of action for the remedy of a constructive trust is dismissed.

## CONCLUSION

In concluding that the First Amendment bars plaintiffs' claims in this case, the Court is not holding that the First Amendment provides absolute immunity for tortious conduct in connection with news gathering and dissemination. Rather, the Court has balanced the First Amendment values against plaintiffs' intangible property rights. Reaching such a conclusion adequately protects the plaintiffs' rights in their intangible property and rights of publicity. Had the plaintiffs shown that USA Today or Star Magazine began running a 900 number in a manner that was wholly unrelated to news gathering and reporting, the First Amendment would provide no protection. For example, if the defendants provided 900 number services that had no relation to any proposed article or continued running the 900 number service past the time of the publication of the article, plaintiffs could sustain their burden of showing that a defendants' use of the New Kids name was not related to a protected First Amendment activity and constituted commercial exploitation. Because the plaintiffs have not raised a genuine issue of material fact regarding whether USA Today's and Star Magazine's use of a 900 number service was unrelated to news gathering and dissemination, misleading as to content, or explicitly false as to sponsorship, endorsement or authorization, summary adjudication of this matter is proper.

1548–1552