**NO FEAR, INC., Plaintiff,**

v.

**IMAGINE FILMS, INC.,
et al., Defendants.**

**No. CV 94–6414 RG (Ex).**

United States District Court,
C.D. California.

July 5, 1995.

Kit M. Stetina, William J. Brucker, Stetina Brunda & Buyan, Laguna Hills, CA, for No Fear, Inc.

Maren Christensen, Gail Migdal Title, Jeffrey Ian Abrams, Rosenfeld Meyer & Susman, Beverly Hills, CA, for Imagine Films, Inc., Universal City Studios Inc.

ORDER

REAL, District Judge.

Defendants' Motion for Summary Judgment came before this Court, the Honorable Richard A. Gadbois, Jr., presiding, on March 20, 1995. Upon consideration of the papers and the arguments presented by the parties, this Court determined that further briefing was necessary on the relevant legal standard. Upon the completion of said briefing, on May 1, 1995, the matter stood submitted. Having duly considered the parties' arguments, this Court now rules as follows:

Defendants' Motion for Summary Judgment is hereby **DENIED.**

**I. Background**

Plaintiff No Fear, Inc. ("No Fear") is a company engaged in manufacturing and marketing sportswear with the logo "No Fear." Plaintiff has registered its No Fear trademark for apparel, jewelry, etc., in the United States and abroad. Defendants Imagine Films Entertainment, Inc. ("Imagine") and Defendant Universal Studios, Inc. ("Universal"), (collectively, "Defendants"), are cur-

rently engaged in producing a movie entitled "No Fear" ("the Film").

The Film is about a disturbed, amoral young man who seduces a beautiful sixteen-year-old girl and terrorizes her family. According to Defendant, the title "No Fear" refers to the amoral and "depraved fearlessness" of the young man who engages in multiple murder, rape and animal mutilation. *See* Declaration of Karen Kehela ("Kehela Declaration") ¶ 6.

Plaintiff seeks to enjoin Defendants from using the title "No Fear." Its complaint asserts five causes of action against Defendants: (1) Lanham Act violations, 15 U.S.C. § 1114(1)(a); (2) statutory unfair competition, Cal.Bus. & Prof.Code § 17200 *et seq.;* (3) dilution of trademark; (4) common law unfair competition; and (5) injunctive relief.

Defendants now move for summary judgment based exclusively on an affirmative First Amendment defense. Defendants reserve the right to challenge the sufficiency of Plaintiff's claims at a later date, should their First Amendment defense prove unavailing.

## II. Analysis

■ Defendants' Motion for Summary Judgment is based exclusively upon the standard articulated in *Rogers v. Grimaldi,* 875 F.2d 994 (2nd Cir.1989) and its progeny.[1]

In *Rogers v. Grimaldi,* 875 F.2d 994 (2nd Cir.1989), the court found that movie titles, "like the artistic works they identify, are of a hybrid nature, combining artistic expression and commercial promotion.... The artistic and commercial elements of titles are inextricably intertwined." *Id.* at 998. In light of this hybrid commercial-artistic function, the

*Rogers* court held that Lanham Act claims against a movie title must be subjected to a stringent balancing test:

> We believe that in general the Act should be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression. In the context of allegedly misleading titles using a celebrity's name, that balance will normally not support application of the Act unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work.

*Id.* at 999. Under *Rogers,* then, § 43(a) of the Lanham Act "does not bar a minimally relevant use of a celebrity's name in the title of an artistic work where the title does not explicitly denote authorship, sponsorship, or endorsement by the celebrity or explicitly mislead as to the content." *Id.* at 1005.

*Rogers,* by its own terms, is limited to cases involving the use of a celebrity's name in a movie title. *See Rogers,* 875 F.2d at 999; *see also* McCarthy on Trademarks § 27.08[2][g], n. 59. Subsequent courts, however, have expanded the scope of *Rogers* to include numerous other areas of expressive conduct.[2] In so doing, the Second Circuit has effectively supplemented the *Rogers* test by applying the standard likelihood of confusion factors.[3] In *Cliffs Notes,* the court stated in relevant part:

> Thus, we hold that the *Rogers* balancing approach is generally applicable to Lanham Act claims against works of artistic

---

**1.** Surprisingly, the Ninth Circuit has not yet addressed the confluence of First Amendment concerns and the Lanham Act.

**2.** Subsequent case law has expanded the scope of *Rogers* to cases involving parody, *see Cliffs Notes, Inc. v. Bantam Doubleday Dell Publishing Group,* 886 F.2d 490 (2d Cir.1989); jokes, *see Yankee Pub. Inc. v. News America Pub. Inc.,* 809 F.Supp. 267 (S.D.N.Y.1992); commentary, criticism, and news reporting, *see New Kids on the Block v. News America Public Inc.,* 745 F.Supp. 1540 (C.D.Cal.1990); the use of marks or names in artistic titles, *see DeClemente v. Columbia Pictures Industries, Inc.,* 860 F.Supp. 30 (E.D.N.Y. 1994); *Titan Sports, Inc. v. 3–G Home Video, et al.,* 19 U.S.P.Q.2d 1867, 1991 WL 228716

(C.D.Cal.1991); and the use of registered marks in the substance of an artistic work, *see Ocean Bio–Chem, Inc. v. Turner Network Television, Inc.,* 741 F.Supp. 1546 (S.D.Fla.1990). The *Rogers* court specifically excluded cases of competing movie titles from the scope of its ruling. *Id.* at 999, fn. 5; *Morgan Creek Productions, Inc. v. Capital Cities/ABC, Inc.,* 22 U.S.P.Q.2d 1881, 1991 WL 352619 (C.D.Cal.1991).

**3.** In the Second Circuit, these factors are set forth in *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). In the Ninth Circuit, the analogous factors are found in *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348 (9th Cir.1979).

expression, a category that includes parody. This approach takes into account the ultimate test in trademark law, namely, the likelihood of confusion as to the source of the goods in question.

*Id.* at 495 (internal quotation marks and citations omitted).

Subsequent courts evaluating Lanham Act claims against a variety of expressive conduct have applied the rule articulated in *Rogers* by looking to the standard likelihood of confusion factors. *See, e.g., Twin Peaks Productions, Inc. v. Publications International, Inc.,* 996 F.2d 1366, 1379 (2d Cir.1993) ("The question then is whether the title is misleading in the sense that it induces members of the public to believe the Book was prepared or otherwise authorized by TPP. This determination must be made, in the first instance, by application of the venerable *Polaroid* factors. However, the finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment, interest recognized in *Rogers.*" (citation omitted)); *see also DeClemente,* 860 F.Supp. at 51; *Girl Scouts of U.S. v. Bantam Doubleday Dell Publishing Group,* 808 F.Supp. 1112, 1122 (1992).

Defendants attempt to draw a distinction between the so-called *Rogers* "explicitly misleading" analysis and the *Cliffs Notes* likelihood of confusion analysis. Under Defendants' approach, this Court need apply only the *Rogers* explicitly misleading analysis because the basis of any possible confusion in this case is the title and not the substance of the Film. Plaintiff, in turn, argues that the likelihood of confusion factors need be applied in cases where there is the possibility of confusion as to source as well as content. It is apparent to this Court that Plaintiff is correct.

▉ The same test is applicable to protected expression, whether it be parody or the use of a protected mark in the title of an artistic work, and whether the fear of confusion concerns the content or the source of the artistic work. As the *Girl Scouts* court stated:

In contrast to *Rogers,* which involved social and personal commentary, and to *Cliffs Notes,* which involved parody, Plaintiffs' claim involves fictional children's books. However, the central issue in all three cases is the same: whether the risk of confusion as to the source of Defendants' merchandise is greater than the public interest in artistic expression.... While the analysis and outcome could differ because of the nature of the different modes of artistic expression, the balancing test employed in trademark infringement cases involving the First Amendment is the same.

*Id.* at 1121; *see also Yankee Publishing,* 809 F.Supp. at 279 ("Because unauthorized uses that provoke litigation, both in the copyright and in the trademark field, often involve parody, the decisions often discuss the special latitudes that are afforded to parody. But parody is merely an *example* of the types of expressive content that are favored in fair use analysis under the copyright law and First Amendment deference under the trademark law." (emphasis added)).

There is no doubt substantial confusion in the case law about the precise role of the likelihood of confusion factors in the application of the rule articulated in *Rogers. See, e.g., DeClemente,* 860 F.Supp. at 51 (applying *Polaroid* factors as well as *Rogers* "explicitly misleading" test); *Girl Scouts,* 808 F.Supp. at 1122 ("Although possibly not required to do so in light of *Cliffs Notes* and *Rogers,* this Court chooses to examine each of the eight *Polaroid* factors in turn ..."). However, the more reasoned analysis indicates that cases of parody or competing artistic titles should not be singled out for preferential treatment where the interests underlying the Lanham Act and the First Amendment are in conflict. Neither the language in the relevant case law nor public policy supports such a distinction.

Accordingly, this Court adopts the likelihood of confusion standard set forth in *Twin Peaks,* 996 F.2d at 1379.[4] Defendant simply cannot distill First Amendment concerns

---

**4.** This Court thus declines to follow the "explicitly misleading" approach adopted by pre-*Cliffs Notes/Twin Peaks* cases in this District and elsewhere, *see New Kids on the Block v. News Amer-*ica Pub., Inc., 745 F.Supp. 1540 (C.D.Cal.1990), *aff'd on other grounds,* 971 F.2d 302 (9th Cir. 1992).

from the traditional framework in which courts determine the likelihood of confusion under the Lanham Act. *See Anheuser–Busch, Inc. v. Balducci Publications,* 28 F.3d 769, 773 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 903, 130 L.Ed.2d 787 (1995) ("We believe that the better course would have been to analyze the likelihood of confusion first and then proceed to an analysis of the First Amendment issues."). Instead, this Court will first determine the likelihood of confusion under *Sleekcraft* and then weigh Plaintiff's showing of likelihood of confusion against the First Amendment concerns raised by Defendants' expressive conduct. *See Twin Peaks,* 996 F.2d at 1379. Plaintiff's showing under *Sleekcraft* must be particularly compelling to overcome the constitutional protection afforded expressive activity. *Id.*

At this juncture, it is evident and undisputed that "No Fear" relates to the content of the Film; Defendant has thus satisfied the first prong of the *Rogers* test. However, due to the limited basis for Defendants' Motion, the parties have failed to present adequate evidence as to the second prong of the *Rogers* test, the possibility of confusion as to the source or the content of the Film. As discussed above, this prong requires evaluation of the *Sleekcraft* factors, which were only peripherally addressed in the papers.[5]

Accordingly, Defendants' Motion for Summary Judgment is hereby **DENIED.**[6]

**IT IS SO ORDERED.**

---

**5.** Should it become apparent that Plaintiff is unable to present evidence tending to show the likelihood of consumer confusion, this issue may be revisited upon a subsequent motion. This Court notes, however, that a determination of consumer confusion tends to be highly fact-intensive and hence inappropriate for summary judgment. *See, e.g., Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1355 (9th Cir.1985); *United*

*States Jaycees v. San Francisco Junior Chamber of Commerce,* 354 F.Supp. 61, 68–69 (N.D.Cal. 1972), *aff'd,* 513 F.2d 1226 (9th Cir.1975) (per curiam).

**6.** It is apparent that the same analysis governs a dilution claim. *See Yankee Publishing,* 809 F.Supp. at 282; *New Kids,* 745 F.Supp. at 1542, fn. 1.