[No. F006105. Fifth Dist. Feb. 24, 1986.]

LUCINDA O'CONNOR, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
PHILLIP D. WYMAN, Real Party in Interest.

[No. F006119. Fifth Dist. Feb. 24, 1986.]

MICHAEL BERMAN et al., Petitioners, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
PHILLIP D. WYMAN, Real Party in Interest.

COUNSEL

McCambridge & Deixler, Bert H. Deixler, George R. McCambridge, Shinaan S. Krakowsky, Ginna Ingram, Lary Alan Rappaport, Lisa Specht, David Elson, Susan J. Troy, Manatt, Phelps, Rothenberg, Tunney & Phillips for Petitioners.

No appearance for Respondents.

Joseph Noriega and Margaret E. Spencer for Real Party in Interest.

OPINION

**BEST, J.**—In this case of first impression, we hold that the Legislature did not intend California's consumer protection statutes to apply to political election campaigning.

Michael Berman, Carl D'Agostino and B.A.D. Campaigns, Inc. (collectively B.A.D.) and Lucinda O'Connor (O'Connor) separately petition this court for a stay of the lower court proceedings and a writ of mandate directing the respondent superior court to set aside its order of August 9, 1985, in which it overruled B.A.D.'s and O'Connor's demurrers to the complaint for damages and injunctive relief filed by Phillip D. Wyman (Wyman), real party in interest. Wyman's complaint was brought pursuant to Business and Professions Code[1] sections 17200 et seq. and 17500 et seq.

In the first cause of action for unfair business practice and misrepresentation, Wyman alleged as follows:

In the 1984 general election, Wyman, the incumbent assemblyman for California's 34th district, was pitted against Democratic candidate O'Connor. O'Connor had retained the Los Angeles political and campaign consulting firm of B.A.D. to act as her political consultants.

In November 1984, B.A.D. caused to be circulated among voters in the 34th district a "slate mailer"; said slate mailer named O'Connor, among others, as a candidate endorsed by the Democratic party. The mailer also contained a purported quote attributing to State Senator Walter Stiern the comment that "Wyman wants to use us [Kern County] for L.A.'s garbage dump." Despite the attribution contained in the slate mailer, Senator Stiern had neither made the statement quoted, nor had he at any time given permission to B.A.D. and O'Connor to attribute to him the quoted language.

Similarly, in or about November 1984, O'Connor and B.A.D. also disseminated a purported endorsement of O'Connor by Joe Martin, state commander of the Veterans of Foreign Wars; said purported endorsement attributed to Mr. Martin the quote stating, among other things, that "Phil Wyman is no friend of veterans," and that Wyman had "refused to take a stand" on a home loan program for California veterans. Mr. Martin had never made the statement attributed to him nor had he authorized the use of his name to endorse O'Connor.

Wyman also alleged that the aforesaid wrongful acts by O'Connor and B.A.D. caused him actual damages in excess of $4,000 for sums necessarily expended for advertising to counter the false and misleading statements. He further alleged as damages the impairment of his professional reputation and his good will with the electorate in an unknown sum. Wyman finally alleged that the alleged acts were committed with actual malice and with

---

[1]All statutory references are to the Business and Professions Code unless otherwise noted.

wanton disregard of Wyman's rights, thus entitling him to punitive damages in the sum of $1 million.

In his third cause of action[2] for injunctive relief against B.A.D. pursuant to sections 17535 and 17204, Wyman further alleged on information and belief that B.A.D. regularly engaged in the business practice of promoting their chosen candidates by unauthorized use of names of public figures and the false attribution to such public figures of endorsements and purported quotations.

Also on information and belief, Wyman alleged that the unfair business practices on the part of B.A.D. have been criticized by prominent politicians of both the Democratic and Republican parties and have been the subject of investigation and concern on the part of the Fair Political Practices Commission.

Finally, Wyman alleged that unless enjoined therefrom by the court, B.A.D. will continue to engage in said unfair business practices in violation of sections 17500 and 17200, and that irreparable injury will be caused to Wyman, other political candidates, public figures and the general public in an extent, nature and amount impossible to ascertain.

Thus, Wyman prayed that B.A.D. should be preliminarily and permanently restrained from publishing and disseminating slate mailers or other campaign literature which (1) utilized the name of a public figure without his knowledge and written consent in an "endorsement" of a candidate for public office; or which (2) attribute to any such public figure language endorsing a candidate or disparaging his or her opponent, without the knowledge and written consent of the purported author of said quote.

## DISCUSSION

Section 17200 provides: "As used in this chapter, unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

Section 17500 provides: "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or

---

[2]By stipulation of the parties, the demurrer to the second cause of action was sustained without leave to amend.

otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, any statement, concerning such real or personal property or services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any such person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell such personal property or services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both.''

 Wyman contends that a broad interpretation should be given these consumer protection statutes governing unfair competition and false advertising so as to include political campaign practices within their purview.

We could begin this discussion with an analysis of the various cases cited by Wyman and petitioners in support and in opposition to Wyman's contention. Such an analysis would not be particularly helpful, however, since no California case has directly addressed the question of whether the Legislature intended the California consumer protection statutes be applied to govern and regulate political election campaign practices.

Petitioners rely on *Chavez* v. *Citizens for a Fair Farm Labor Law* (1978) 84 Cal.App.3d 77 [148 Cal.Rptr. 278] which involved an attempt to enjoin statements made in the campaign to enact Proposition 14, and wherein the court stated in a footnote, ''. . . this section [Civil Code section 3369, the predecessor of section 17200 et seq. and section 17500 et seq.] applies to unlawful business practices and not public election campaigning.'' (*Id.*, at p. 79, fn. 2.) Since the case was actually resolved on another point, the court's statement is only dictum.

However, in interpreting California's consumer protection statutes, we may be guided by the federal courts' interpretation of similar federal statutes.

In *People* ex rel. *Mosk* v. *National Research Co. of Cal.* (1962) 201 Cal.App.2d 765 [20 Cal.Rptr. 516], the court stated: "Although the wordings of the state and federal statutes are not identical, the differences are not of a degree to impair comparison. To us the expressions 'unfair or fraudulent business practice' and 'unfair or deceptive acts or practices in commerce,' as used respectively in the two statutes, appear practically synonymous. It is clear from the decisions under the federal act that the Federal Trade Commission has the power to enjoin any acts and practices which are unfair or deceptive to the public generally, regardless of their effect on private competition. [Citations.] In view of the similarity of language and obvious identity of purpose of the two statutes, decisions of the federal court on the subject are more than ordinarily persuasive." (*Id.*, at pp. 772-773, fn. omitted.)

Federal cases under the Federal Trade Commission Act and the Sherman Antitrust Act have uniformly held that the laws regulating business practices do not apply to political campaign activities. (See, e.g., *Eastern R. Conf.* v. *Noerr Motors* (1961) 365 U.S. 127, 135 [5 L.Ed.2d 464, 470, 81 S.Ct. 523]; *Subscription T.V.* v. *Southern Cal. Theatre Owners* (9th Cir. 1978) 576 F.2d 230, 232; *Suburban Restoration Co., Inc.* v. *Acmat Corp.* (2d Cir. 1983) 700 F.2d 98, 99; *Forro Precision, Inc.* v. *Intern. Business Machines* (9th Cir. 1982) 673 F.2d 1045, 1059; *Rodgers* v. *F.T.C.* (9th Cir. 1974) 492 F.2d 228.)[3]

Wyman then claims that the speech herein—encompassed exclusively in political campaign literature—is not protected by the Constitution because B.A.D. are paid political consultants. The United States Supreme Court has rejected an identical argument directed toward the activities of a film distribution company. In *Joseph Burstyn, Inc.* v. *Wilson* (1952) 343 U.S. 495 [96 L.Ed. 1098, 72 S.Ct. 777], the court held that a film distribution company which operated for profit was not thereby stripped of its First Amendment rights. The court stated: "It is urged that motion pictures do not fall within the First Amendment's aegis because their production, distribution, and exhibition is a large-scale business conducted for private profit. We cannot agree. That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose

---

[3]In *Rodgers* v. *F.T.C., supra,* plaintiff charged that opponents of a Washington state antilitter initiative employed "unfair and deceptive trade practices" in their attempts to defeat the initiative. The complaint requested, among other things, a declaration that the practices which plaintiff described were violations of section 5 of the Federal Trade Commission Act and of the Sherman Act. The district court dismissed the complaint and the Ninth Circuit affirmed, agreeing that "'the proscriptions of Section 5 of the FTC Act . . . like the proscriptions of the Sherman Act, are tailored for the business world, not for the political arena.'" (*Rodgers* v. *F.T.C., supra,* 492 F.2d at p. 230.)

liberty is safeguarded by the First Amendment." (*Id.*, at pp. 501-502, fn. omitted [96 L.Ed. at p. 1106].)

■ Thus, it is the context in which the speech is made, not the status of the speaker, which determines whether speech is protected under the First Amendment.

■ It should also be noted that if the statutes were held to apply to the political arena, their broad sweep would probably render them fatally defective. Sections 17200 et seq. and 17500 et seq. provide no standards by which First Amendment conduct is to be regulated. Because the statutes are not narrowly drawn to reflect a considered legislative judgment concerning the scope of permissible regulation of political speech, it appears the statutes were not designed to regulate conduct in a political campaign.

Wyman implicitly recognizes the unconstitutionality of the statutes if applied to political speech. Nevertheless, Wyman would have this court attempt to cure that infirmity by reading into these broadly worded statutes a standard of "actual malice." Since the language of sections 17200 and 17500 contains no such standard, Wyman is asking this court to unilaterally invent a standard for prohibiting "unfair" or "misleading" political speech, without any legislative guidance as to the scope of proper regulation. ■ However, where a law seeks, without specificity, to regulate an area protected by the First Amendment, the courts will not read limitations into the law to save it from being unconstitutional. (*Dillon* v. *Municipal Court* (1971) 4 Cal.3d 860, 871 [94 Cal.Rptr. 777, 484 P.2d 945].)

■ Moreover, even if the statutes could be construed to include a malice standard, they cannot be applied to regulate political speech. Unlike an action for libel, which requires objective proof that a statement is false, an action under the Business and Professions Code only requires that a statement be "unfair" or "misleading." These are subjective concepts, which vary according to the political viewpoint of the listener. In the context of political campaigns, almost any political speech might be viewed by an opposing candidate as "unfair" or "misleading." Courts should not and, practically speaking, cannot be in the business of determining the fairness and unfairness of statements made in a political campaign. These matters should be left to the criticism of the public and press to assure a free and unfettered interchange of debate on public issues.

In sum, had the Legislature intended for sections 17200 et seq. and 17500 et seq. to encompass activity in the political, rather than commercial, arena, it would have made that intention clear. ■ In the discharge of its constitutional responsibilities, however, the Legislature has provided a com-

plete and carefully limited scheme of election regulation and enforcement pursuant to the express penal provisions of the Elections Code. (See Elec. Code, § 29000 et seq.) The private cause of action arising from election campaigning, such as the one Wyman seeks to create in this case, is not authorized in the Elections Code. ▆▆ It is apparent that the Legislature recognized, in its scheme of election regulation, that any attempt at wholesale regulation of, or government intrusion into, the content of political literature is constitutionally impermissible.

In view of our holding that sections 17200 et seq. and 17500 et seq. do not apply to political election campaign practices, we deem it unnecessary to address the additional issues raised by the parties.

Let a peremptory writ of mandate issue to the Superior Court of the County of Kern in action No. 190712 to vacate its order overruling petitioners' demurrers to the first and third causes of action of plaintiff's complaint and to enter a new order sustaining said demurrers without leave to amend.

Each party will bear his or her own costs on appeal.

Brown (G. A.), P. J., and Hamlin, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied June 20, 1986. Bird, C. J., was of the opinion that the petition should be granted.