[No. B057605. Second Dist., Div. Three. Sept. 27, 1991.]

MICHAEL ANTONOVICH, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BAXTER WARD SCHWELLENBACH, Real Party in Interest.

COUNSEL

Riordan & McKinzie, Kenneth Klein and Marc D. Mootchnik for Petitioner.

No appearance for Respondent.

Baxter Ward Schwellenbach, in pro. per., for Real Party in Interest.

## OPINION

**DANIELSON, J.**—Michael Antonovich (Antonovich) petitions this court for a writ of mandate (Code Civ. Proc., § 1085) to compel respondent court to grant his motion for summary judgment against Baxter W. Schwellenbach, also known as Baxter Ward (Ward).

We deny the petition and discharge the alternative writ of mandate.

### FACTUAL STATEMENT

Ward was a television news director and anchorman in Los Angeles from 1955 to 1972. He was elected and served as a Los Angeles County supervisor for two terms from 1972 to 1980.

In 1980 Antonovich defeated Ward in an election for the latter's Fifth District seat on the county board of supervisors.

Ward vacated the offices on a Friday, and Antonovich took possession of them on the following Monday.

In 1984 Antonovich was reelected as the Fifth District supervisor.

In the 1988 election Ward ran against Antonovich. Ward was a public figure. During the 1988 election certain statements were attributed to Antonovich which charged Ward with removing and/or destroying files from the Fifth District supervisor's office prior to Antonovich taking possession of the office from Ward in 1980.

The statements at issue are:

(1) On September 16, 1988, during the Channel 2 Newsmakers program, Antonovich stated: "Mr. Ward had such contempt for constituents that he shredded and destroyed all of the files the day we came into office."

(2) On October 5, 1988, during a debate in South Pasadena, Antonovich stated: "Baxter Ward deliberately destroyed the files of the 5th District."

(3) On October 11, 1988, during a debate on Century Cable, Antonovich stated: "Mr. Ward, the day I took office, I was stunned to find the file cabinets were empty."

(4) On October 20, 1988, in a mailer, the following statement was attributed to Antonovich: "And to give you an idea of the type of man Baxter Ward really is, when he vacated the office after his 1980 defeat, he took with him critically *important files* I needed to serve our county's residents!"

(5) In another mailer Antonovich charged: ". . . [Ward] removed all the files in the office, including file records of constituents who needed help from the new Supervisor."

(6) In television ads immediately prior to the November 8, 1988, election the following statement was made on behalf of Antonovich: "The Ward Era—Empty Files, Empty Promises."[1]

---

[1]For the purposes of the summary judgment motion, Antonovich concedes the above statements are defamatory.

## PROCEDURAL STATEMENT

On October 25, 1989, Ward filed a verified complaint against Antonovich for libel based on the above statements.

On December 15, 1989, Antonovich filed a verified answer in which he generally denied the material allegations of the complaint and asserted seven affirmative defenses.

On November 29, 1990, Antonovich filed a motion for summary judgment on the ground that Ward could not establish the element of actual malice.

On or about January 7, 1991, Ward filed a response to the motion.

On January 25, 1991, a hearing was held on the motion. The hearing was then continued to March 22, 1991, for further briefing.

On February 20, 1991, Antonovich filed a supplemental brief in support of his motion for summary judgment.

On or about March 11, 1991, Ward filed a response to that supplemental brief.

On March 22, 1991, following further hearing, the court denied the motion on the ground that there was a triable issue of fact as to malice. The court's principal concern was: "If the statement was made once, this Court believes that . . . there would be no malice. The question is if the statements are made over a period of time with sufficient cooling off time between the statements—in other words, if I was [sic] at one interview, and then during that thirty minute time or sixty minute time I said it four or five times, to me, that's a single time. You know, I'm using a term of a cooling off period. And then the statement is made again on another day and it's made at another time after that. Does repetition of a statement where [there] is sufficient time to either inquire, to investigate, to hear other points, does that constitute malice when there might be circumstantial evidence that the person might have known it was false?"

On April 11, 1991, Antonovich filed a petition for a writ of mandate. On May 30, 1991, this court issued an alternative writ of mandate.

## ISSUE PRESENTED

Does the record contain clear and convincing evidence from which a trier of fact could conclude that Antonovich acted with actual malice in making the asserted defamatory statements?

## STANDARD OF REVIEW

■ The First Amendment precludes a defamation action merely based upon an unfavorable characterization of a political opponent during an election campaign. Thus, in enacting the Elections Code "the Legislature recognized, in its scheme of election regulation, that any attempt at wholesale regulation of, or government intrusion into, the content of political literature is constitutionally impermissible." (*O'Connor* v. *Superior Court* (1986) 177 Cal.App.3d 1013, 1020 [223 Cal.Rptr. 357]; see generally, Elec. Code, § 29000 et seq.) However, the broad protection of the First Amendment does not extend to a false statement uttered with actual malice by a candidate in a political campaign.

■ Where "actual malice" is the pivotal issue in a defamation case, summary judgment in favor of a publisher of the defamatory statement is a favored remedy if the opponent fails to present clear and convincing evidence of actual malice. (*Reader's Digest Assn.* v. *Superior Court* (1984) 37 Cal.3d 244, 252 [208 Cal.Rptr. 137, 690 P.2d 610].)

Nonetheless, "trial courts should act . . . with caution in granting summary judgment" (*Anderson* v. *Liberty Lobby, Inc.* (1986) 477 U.S. 242, 255 [91 L.Ed.2d 202, 216, 106 S.Ct. 2505]) and may "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." (*Ibid.*) Although "[t]he movant has the burden of showing there is no genuine issue of fact," (*id.* at p. 256) "the plaintiff must present affirmative evidence [to show actual malice by clear and convincing evidence] in order to defeat a properly supported motion for summary judgment." (*Id.* at p. 257 [91 L.Ed.2d at p. 217].)

The critical issue is the publisher's actual belief as to the truth or falsity of the statements made, which is a subjective test. Although the publisher may testify that he or she believed the statements to be true, such testimony is not determinative. Instead, the trier of fact must make its own finding concerning the good faith of the publisher and is entitled to consider such things as whether "the story is fabricated," "the product of his [or her] imagination, or is based wholly on an unverified anonymous telephone call. Nor will [the publisher] be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation." (*St. Amant* v. *Thompson* (1968) 390 U.S. 727, 732 [20 L.Ed.2d 262, 268, 88 S.Ct. 1323].)

■ "A public figure may not recover damages for a defamatory falsehood without clear and convincing proof that the false 'statement was made with "actual malice"—that is, with knowledge that it was false or with

reckless disregard of whether it was false or not.' *New York Times Co.* v. *Sullivan* [(1964)] 376 U.S. 254, 279-280 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412]. See *Curtis Publishing Co.* v. *Butts*, 388 U.S. 130, 162 [18 L.Ed.2d 1094, 87 S.Ct. 1975] (1967) (opinion of Warren, C. J.)." (*Harte-Hanks Communications* v. *Connaughton* (1989) 491 U.S. 657, 659 [105 L.Ed.2d 562, 571, 109 S.Ct. 2678].) "The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law. *Bose Corp.* v. *Consumers Union of United States, Inc.* 466 U.S., at 510-511 [80 L.Ed.502, 104 S.Ct. 1949, 1984]." (*Harte-Hanks Communications* v. *Connaughton, supra,* 491 U.S. at p. 685 [105 L.Ed.2d at p. 587].)

■ "The meaning of terms such as 'actual malice'—and, more particularly, 'reckless disregard'—however, is not readily captured in 'one infallible definition.' *St. Amant* v. *Thompson,* [*supra,*] 390 U.S., at 730, [20 L.Ed.2d 262, 88 S.Ct. 1323]. Rather, only through the course of case-by-case adjudication can we give content to these otherwise elusive constitutional standards. *Bose, supra,* at 503, [80 L.Ed.2d 502, 104 S.Ct. 1949]." (*Harte-Hanks Communications* v. *Connaughton, supra,* 491 U.S. at p. 686 [105 L.Ed.2d at pp. 587-588].)

It is clear, however, that "reckless conduct is not measured by whether a reasonably prudent [person] would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." (*St. Amant* v. *Thompson, supra,* 390 U.S. 727, 731 [20 L.Ed.2d 262 at p. 267].) "The standard is a subjective one—there must be sufficient evidence to permit the conclusion that the defendant actually had a 'high degree of awareness of . . . probable falsity.' [Citation.] As a result, failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard. [Citations.]" (*Harte-Hanks Communications* v. *Connaughton, supra,* 491 U.S. 657, 688 [105 L.Ed.2d at p. 589].)

"Although failure to investigate will not alone support a finding of actual malice, [citation], the purposeful avoidance of the truth is in a different category." (491 U.S. at p. 692 [105 L.Ed.2d at p. 591].) "[I]naction," i.e., failure to investigate, which "was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of [the subject] charges" will support a finding of actual malice. (*Ibid.*)

## Discussion

As set forth above, the statements at issue in this action were published on six or more different occasions, during the period from September 16, 1988, until November 8, 1988, all of which were about eight years after the alleged events on which they were predicated.

### I. *Essence of Trial Court's Ruling*

■■■ The thrust of Antonovich's position is the trial court erred in concluding that the mere repetition of the defamatory statement may raise an inference of actual malice, and thus, summary judgment was improper. As authority, he relies on *Schultz* v. *Newsweek, Inc.* (6th Cir. 1982) 668 F.2d 911, and *Rosenbloom* v. *Metromedia* (1971) 403 U.S. 29 [29 L.Ed.2d 296, 91 S.Ct. 1811].

Based on our review of the record we conclude that Antonovich has misconstrued the import of the court's ruling. The essence of the court's reasoning is a trier of fact could draw an inference of actual malice from the fact that there was circumstantial evidence alerting Antonovich of the probable falsity of his statements against Ward and placing him on inquiry notice after the initial statement was made and the fact that Antonovich thereafter made no efforts to ascertain the truth of the matter prior to making the subsequent statements.

Moreover, regardless of the reasoning given, it is incumbent upon us to uphold the trial court's action if it is correct on any legal theory applicable to the case. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19 [112 Cal.Rptr. 786, 520 P.2d 10].)

### II. *Nature of Defamatory Statements*

Based on our independent review of the record we conclude it contains clear and convincing evidence from which the trier of fact could find Antonovich made the defamatory statements with actual malice, i.e., reckless disregard of the truth. (*New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254, 279-280 [11 L.Ed.2d 686, 706-707, 84 S.Ct. 710, 95 A.L.R.2d 1412].)

The defamatory statements at issue fall within two separate categories: (1) destruction of the files, i.e., Ward "shredded and destroyed all of the files the day [Antonovich] came into office" and "Baxter Ward deliberately destroyed the files of the 5th District"; and (2) removal of the files, i.e., "the file cabinets were empty," "when he vacated the office after his 1980 defeat, he took with him critically important files," "[Ward] removed all the files in the

office, including file records of constituents who needed help from the new Supervisor," and "The Ward Era—Empty Files, Empty Promises."

At this juncture, it should be noted that Antonovich has opted for an all or nothing decision, i.e., summary judgment on the defamatory statements as a whole rather than, alternatively, for summary adjudication of issues as to each statement.

### A. *No Prima Facie Showing as to Destruction of Files Statements*

■ The movant in a motion for summary judgment must first establish a prima facie showing that he is entitled to judgment. "The motion must stand self-sufficient and cannot succeed because the opposition is weak. [Citations.]" (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203]; see also, *Miller* v. *Nestande* (1987) 192 Cal.App.3d 191, 197 [237 Cal.Rptr. 359, 62 A.L.R.4th 301].) Here, Antonovich must initially establish, directly or by inference, that he had a subjective good faith belief in the truth of the defamatory statements. (*St. Amant* v. *Thompson, supra,* 390 U.S. 727, 732 [20 L.Ed.2d 262, 267-268].)

■ "An inference is a conclusion as to the existence of a material fact that a jury may properly draw from the existence of certain primary facts. [Citations.] It is not always possible . . . to introduce evidence directly bearing upon the existence of a fact . . . . The evidence available . . . may serve only to establish the existence of certain primary facts that are logically connected with the material fact. If a jury can reasonably infer from these primary facts that the material fact exists, the party has introduced sufficient evidence to entitle him to have the jury decide the issue. . . . Whether a particular inference can be drawn from certain evidence is a question of law . . . . [Citations.]" (*Blank* v. *Coffin* (1942) 20 Cal.2d 457, 460-461 [126 P.2d 868]; see, also, *Hamilton* v. *Pacific Elec. Ry, Co.* (1939) 12 Cal.2d 598, 602-603 [86 P.2d 829].)

■ In support of his motion for summary judgment Antonovich submitted evidence to show that he uttered the above statements in a good faith belief in the truth thereof. In his declaration Antonovich stated that he made the subject statements based on his "belief that those files were removed by Ward or at his direction." He further stated that he "did not have any reason to believe that any statements [he] made about the files were false."

As the factual basis for his belief, Antonovich stated: When he moved into the Fifth District office in 1980, he "found that there were almost no files of

any kind present in the office and none relating to constituents of the Fifth Supervisorial District. [¶] Because so many files were missing, and because Ward had occupied the office and had control over the files on the Friday prior to the Monday when [he] moved in, [he] concluded that the files had been removed from the office by Ward, or at Ward's direction."[2]

From the foregoing a trier of fact could find that Antonovich had a subjective belief that the paucity of files in the Fifth District office when he moved there in 1980 was attributable to Ward and that such belief was in good faith.

On the other hand, such evidence would not support a finding that he subjectively believed that Ward had destroyed the files and does not give rise to a reasonable inference that Ward "shredded and destroyed all of the files the day [Antonovich] came into office" or that "Baxter Ward deliberately destroyed the files of the 5th District." The record is in fact devoid of any factual basis to support a subjective belief, in good faith or otherwise, on the part of Antonovich that the latter two defamatory statements were true at the time they were uttered in 1988.

Accordingly, we conclude that with regard to the defamatory statements concerning the destruction of files by Ward, Antonovich has failed to carry his burden to establish a prima facie showing that he uttered those statements with a good faith belief in the truth thereof. From the absence of such evidence the trier of fact could conclude that the statements were based on speculation or fabricated. (See, e.g., *St. Amant* v. *Thompson, supra,* 390 U.S. 727, 732 [20 L.Ed.2d 262, 267-268].)

B.  *Clear and Convincing Evidence of Actual Malice as to Removal of File Statements*

With regard to the remaining defamatory statements, we find that Antonovich has made the requisite prima facie showing, i.e., a subjective good faith belief in the truth of the statements regarding Ward's removal of the files in 1980. On the other hand, we further find Ward has submitted clear

---

[2]In her supporting declaration Kathleen Crow, Antonovich's chief deputy, stated that when they moved into the Fifth District supervisor's office, "there were almost no files in the office . . . very little dealing specifically with the Fifth District, and almost nothing dealing with constituents located within that district. Because there were so many files missing, and because . . . Ward, had occupied the office and had control over the files on the Friday prior to the Monday when we moved in, I concluded that Ward had removed the files, or had someone else remove them for him." She further stated that she had discussed the absence of the files and her conclusions with Antonovich at various times between then and the 1988 election. Antonovich, however, did not state that he agreed with or relied on Crow's conclusions.

and convincing evidence from which the trier of fact could nonetheless find actual malice, i.e., reckless disregard of whether they were false or not. (*New York Times Co.* v. *Sullivan, supra,* 376 U.S. 254, 279-280 [11 L.Ed.2d at pp. 706-707].)

In response Ward submitted evidence to show that when he vacated the office in 1980 he left files enough to fill at least 177 boxes, which were placed in storage 8 months after Antonovich took office in 1980. The evidence also showed that the Antonovich staff discussed the fact that files from the Ward term in office still existed and were included within filing cabinets used by the Antonovich staff as late as 1988.[3] From such evidence a trier of fact could find that Antonovich must have entertained a serious doubt as to the truth of his published statements prior to making them.

From the above evidence the trier of fact is entitled to find that as in 1988, eight years after the events, the good faith belief that Antonovich may have held in 1980 that Ward had emptied the cabinets and removed the files, no longer existed, because Antonovich knew or should have known when he made those defamatory statements during the 1988 campaign that they were false. In other words, there was sufficient evidence to support the conclusion that in 1988 Antonovich "actually had a 'high degree of awareness of [the] probable falsity [of the statements].' [Citation.]" (*Harte-Hanks Communications* v. *Connaughton, supra,* 491 U.S. 657, 688 [105 L.Ed.2d at p. 589].)

Ward also submitted evidence to show that Antonovich was offered the opportunity during the October 11, 1988, Century Cable debate to investigate the truth but Antonovich avoided the opportunity.

In his declaration in opposition to the motion for summary judgment Robert Pratt stated he had served as a deputy and assistant chief deputy to former Fifth District Supervisor Ward for the eight-year period between December 1972 and November 1980. Immediately after the November 1980 election, he began preparations for the transition to Antonovich, the new supervisor, and his staff, who would come in on December 1st. In a staff memo Pratt instructed all deputies in the hall of administration and field offices to retain and organize all constituent files, files on county or other government projects, land use matters, etc. He knew that the procedure was followed as of his last day in office, November 26, 1980.

On January 13, 1981, Pratt met with Brian Berger (Berger), a county employee on Antonovich's staff, at Pratt's former office, to discuss the

[3]Any evidentiary objections to such evidence were waived by Antonovich's failure to make them. (Code Civ. Proc., § 437c, subd. (b).)

organization and content of the files and to explain some of the procedures that had been established. In the office was a two-drawer filing cabinet with all of the zoning cases Pratt had filed which were active prior to the transition from Ward to Antonovich. From those files Berger and Pratt reviewed several land use cases carried over from Ward's term, inter alia.

In the October 11, 1988 Century Cable debate Antonovich stated: "Mr. Ward, the day I took office, I was stunned to find the file cabinets were empty." Later in the debate Ward asserted that Antonovich did not complain to anybody in the 1980 campaign that "anything was missing. And nothing was. Everything [Antonovich] needed was there, and you [Antonovich] know it, full well." Ward then offered: "I'll make a proposal: You bring your man, Brian Berger, who was in on the discussions about the correspondence and the files, and I'll bring my man, Mr. Robert Pratt, my former Administrative Deputy. We'll have them both at the next debate, and we'll let them discuss it."

In this case Antonovich submitted no evidence in support of his motion for summary judgment to show what, if any, steps he took to inquire into the truth of his statements after Ward offered to submit his proof for Antonovich's inspection.

Moreover, the evidence in the record reveals that Antonovich, instead, made similar statements thereafter. In a mailer dated October 20, 1988, Antonovich stated: "And to give you an idea of the type of man Baxter Ward really is, when he vacated his office after his 1980 defeat, he took with him critically *important files* I needed to serve our county's residents!" Also, in an Antonovich TV campaign ad for the November 8, 1988, election, which began running November 1, 1988, the narrator stated that Ward destroyed virtually all records pertaining to the Fifth Supervisorial District after losing his seat in 1980 to Antonovich and further stated: "The Ward era," "Empty files, empty promises."

From this evidence the trier of fact was entitled to find that Antonovich's "inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of [the subject] charges," which amounts to a "purposeful avoidance of the truth" and will support a finding of actual malice. (*Harte-Hanks Communications* v. *Connaughton, supra,* 491 U.S. 657, 692 [105 L.Ed.2d 562, 591].)

CONCLUSION

The trial court correctly denied the motion for summary judgment on the ground that triable issues of fact remained regarding the existence of actual

malice. With regard to the defamatory statements concerning destruction of the files by Ward, Antonovich failed to carry his burden to establish a prima facie showing that he had a subjective good faith belief in the truth of those statements. This ground per se justifies denial of the summary judgment motion. Moreover, as for the defamatory statements concerning the emptying of the cabinets and removal of the files by Ward, Ward has submitted clear and convincing evidence from which a trier of fact could find that Antonovich made those statements with actual malice, i.e., reckless disregard of the truth.

## DECISION

The petition for a writ of mandate is denied, and the alternative writ is discharged.

Klein, P. J., and Croskey, J., concurred.

Petitioner's application for review by the Supreme Court was denied January 23, 1992. Panelli, J., and George, J., were of the opinion that the application should be granted.