Filed 10/12/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| WILLIAM JAMES MITCHELL, Plaintiff and Respondent, v. TWIN GALAXIES, LLC, Defendant and Appellant. | B308889 (Los Angeles County Super. Ct. No. 19STCV12592) |

APPEAL from an order of the Superior Court of Los Angeles County. Gregory N. Alarcon, Judge. Affirmed.

Tashroudian Law Group and David A. Tashroudian for Defendant and Appellant.

Manning & Kass, Ellrod, Ramirez, Trester, James E. Gibbons, Steven J. Renick and Anthony J. Ellrod for Plaintiff and Respondent.

_____

William "Billy" Mitchell brought suit against Twin Galaxies, LLC for defamation and false light after Twin Galaxies issued a statement asserting Mitchell's world record scores in the Donkey Kong arcade game were not achieved on original unmodified hardware as required under its rules. As a result, it removed all of Mitchell's world record scores and banned him from participating in its leaderboards. The trial court denied Twin Galaxies' special motion to strike under the strategic lawsuits against public participation statute (anti-SLAPP motion). (Code Civ. Proc., § 425.16.) Because Mitchell showed a probability of prevailing on his claims, the trial court properly denied the anti-SLAPP motion. We affirm the order.

## FACTS

Mitchell holds world records in several video games, including Donkey Kong and Pac-Man. In 1999, Mitchell achieved the first perfect score in the Pac-Man arcade game and was recognized as the "Video Game Player of the Century" by NAMCO, the maker of Pac-Man.

At issue in this case are three of Mitchell's world record scores for the arcade game Donkey Kong. For ease of reference, we refer to them as the "King of Kong score" in which he scored 1,047,200 points on December 28, 2004, the "Mortgage Brokers score" in which he scored 1,050,200 points on July 14, 2007, and the "Boomers score" in which he scored 1,062,800 points on July 31, 2010. Mitchell has appeared in several documentaries on competitive gaming, including a film titled *The King of Kong: A Fistful of Quarters* about an opponent's journey to the world record score for Donkey Kong.

Twin Galaxies was founded by Walter Day in 1982. Day partnered with videogame adjudicators, such as the International Video Game Hall of Fame and Guinness World Records, to facilitate and organize videogame competitions. From 1982 to 2014, Twin Galaxies adjudicated world records through on-site referees or by video. Video adjudication was introduced in the 1990s so players could participate from their homes remotely.

In 2014, Day sold Twin Galaxies to Jason "Jace" Hall. Hall is also a well-known figure in the video game industry with experience in video game design, function, and hardware. Twin Galaxies operates a website at www.twingalaxies.com, where, among other things, competitive video game rules are set, player performances are measured, and records may be viewed and challenged. The Twin Galaxies website also provides a forum for members to discuss all things related to video games.

Twin Galaxies publishes leaderboards on its website for thousands of video game titles across dozens of video game platforms, including arcade machines, game consoles, and emulation platforms such as Multiple Arcade Machine Emulator or M.A.M.E. The leaderboards recognize achievements for high score or fastest time, and they rank players in those, and other, categories. Records and rankings appearing on the Twin Galaxies leaderboards have been used by Guinness World Records in several Guinness World Records Gamer's Edition books and continue to be recognized as world records by the Guinness organization and others.

Twin Galaxies provides a process to dispute a score appearing on a leaderboard. Once a score dispute claim is submitted, it is placed into a public dispute voting forum where the gaming community will publicly discuss, debate, and vote on

the veracity of the claim and present evidence to support or refute the score.

*The Dispute Claim*

Jeremy Young, who was registered through the Twin Galaxies website under the name "Xelnia," disputed Mitchell's King of Kong score, Mortgage Brokers score and Boomers score (the Disputed Scores). Young claimed the Disputed Scores were not achieved on original Donkey Kong arcade hardware as required under the rules. Instead, the Disputed Scores were achieved on an emulation platform such as the M.A.M.E. system. Young examined video tapes of the Disputed Scores and found certain images and anomalies which he asserted could not be produced by the original Donkey Kong arcade hardware. He believed those images could only be produced through the use of a M.A.M.E. system.

Young presented evidence that original Donkey Kong arcade printed circuit board (PCB) hardware draws the Donkey Kong levels frame-by-frame with the first frame drawing 1/2 portions of five girders, and the rest of the frames filling in those girders. Young presented evidence that the Donkey Kong game on emulation software – that is the game loaded on a computer other than a PCB – similarly draws the game's levels frame-by-frame, but with the first frame drawing three girders, with one girder having a protruding line which has been nicknamed the "girder finger."

Young posted screenshots from video footage of the Disputed Scores which showed Donkey Kong levels with three girders in the first frame, with one being the girder finger. There were other unexplained anomalies and artifacts in the footage

4

which led him to believe the games played in the videos were inconsistent with original Donkey Kong arcade games.

Twin Galaxies posted digital copies of the video footage on its website, inviting its community members to investigate and comment on the dispute claim. It also conducted its own investigation of Young's dispute. On April 12, 2018, Twin Galaxies published the following statement:

> "Based on the complete body of evidence presented in this official dispute thread, Twin Galaxies administrative staff has unanimously decided to remove all of Billy Mitchell's scores as well as ban him from participating in our competitive leaderboards.
>
> We have notified Guinness World Records of our decision.
>
> On 02-02-2018 Twin Galaxies member Jeremey Young (@xelnia) filed a dispute claim assertion against the validity of Billy Mitchell's historical and current original arcade Donkey Kong score performances of 1,047,200 (the King of Kong "tape"), 1,050,200 (the Mortgage Brokers score), and 1,062,800 (the Boomers score) on the technical basis of a demonstrated impossibility of original unmodified Donkey Kong arcade hardware to produce specific board transition images shown in the videotaped recordings of those adjudicated performances.
>
> [¶] . . . [¶]
>
> Twin Galaxies has meticulously tested and investigated the dispute case assertions as well as a number of relevant contingent factors, such as the veracity of the actual video performances that the dispute claim assertions rely upon.
>
> In addition to Twin Galaxies' own investigation into the dispute case assertions, at least two different 3rd parties

conducted their own explorations and came to identical conclusions.

Most notable was the 3rd party (Carlos Pineiro) that Billy Mitchell engaged to help examine the dispute case claims on his behalf, utilizing whatever original equipment Billy could provide, whose final finding was consistent with Twin Galaxies investigation and others.

[¶]

**Here are our specific findings:**

- The taped Donkey Kong score performances of 1,047,200 (the King of Kong "tape"), 1,050,200 (the Mortgage Brokers score) that were historically used by Twin Galaxies to substantiate those scores and place them in the database *were not produced by the direct feed output of an original unmodified Donkey Kong Arcade PCB.*

- The 1,062,800 (the Boomers score) Donkey Kong performance does not have enough of a body of direct evidence for Twin Galaxies to feel comfortable to make *a definitive determination on at this time*.

[¶] . . . [¶]

From a Twin Galaxies viewpoint, the only important thing to know is whether or not the score performances are from an unmodified original DK arcade PCB as per the competitive rules. **We now believe that they are not from an original unmodified DK arcade PCB, and so our investigation of the tape content ends with that conclusion and assertion.**

[¶]

6

Twin Galaxies has also investigated this matter as comprehensively as reasonably possible to make sure that its findings are as informed as possible.

[¶] . . . [¶]

**With this ruling Twin Galaxies can no longer recognize Billy Mitchell as the 1st million point Donkey Kong record holder.**"

The statement was distributed to the public through Twin Galaxies' website and social media platforms, where it garnered media attention from mainstream news outlets such as The New York Times, The Washington Post, and Variety. The media reported Twin Galaxies removed Mitchell's world records and banned him because he cheated. Mitchell twice demanded a retraction, which Twin Galaxies denied. After initially stripping Mitchell of his world records, Guinness World Records reinstated them on June 18, 2020, after it conducted its own investigation.

*The Lawsuit*

Mitchell brought suit against Twin Galaxies for defamation and false light, alleging Twin Galaxies implied he cheated to achieve his scores. Mitchell further alleged special damages arose from the defamation because he uses the notoriety associated with his professional gaming reputation to promote his hot sauce company, Rickeys' Hot Sauce.

*Twin Galaxies' anti-SLAPP motion*

Twin Galaxies filed an anti-SLAPP motion, contending its statement arose from protected activity and Mitchell could not establish a probability of success on each of his causes of action. In support of its anti-SLAPP motion, Twin Galaxies submitted a declaration from Hall detailing the company's investigation of the

7

dispute claim. Hall stated he obtained two sets of copies of the video tapes for the King of Kong score and the Mortgage Brokers score from two separate sources previously affiliated with Twin Galaxies. After he confirmed they were identical, he posted digital copies of the video tapes to the Twin Galaxies website for analysis and comment.

A team from Twin Galaxies, including Hall, conducted its own analysis of the video tapes. The team's analysis of the tapes showed the levels drawn in the first frame contained three girders—and the infamous girder finger. According to Hall, they tested extensively and could not avoid finding the girder finger in the two tapes. They also extensively tested gameplay that was captured directly from an unmodified Donkey Kong arcade PCB and were never able to capture the levels containing three girders or the girder finger. From this technical analysis, Twin Galaxies concluded Young's dispute claim was valid and issued its statement.

*Mitchell's Opposition*

Mitchell opposed the anti-SLAPP motion and submitted his own evidence to counter Twin Galaxies'. Mitchell accused Twin Galaxies of fabricating a dispute to draw attention to the website and increase revenue. Mitchell stated in a declaration he urged Hall to interview a number of witnesses, including Walter Day, the founder of Twin Galaxies, as well as the referees and others who witnessed his live performances for the Disputed Scores. He recounted that Hall repeatedly refused to do so and told Mitchell and Day that he "didn't care" about any eyewitnesses.

Mitchell described the rules established by Day for the Mortgage Broker score game. Twin Galaxies assigned two referees to adjudicate Mitchell's game in July 2007 at a

8

convention hosted by the Florida Association of Mortgage Brokers. Day worked with the Senior Engineer at Nintendo to verify the Donkey Kong hardware was unmodified. After his examination of the hardware, the Nintendo engineer sent it directly to the organizers of the convention, who put it into the Donkey Kong machine and locked it in a hotel room. Mitchell affirmed he did not have access to the hardware before or after his performance.

Mitchell achieved the new Donkey Kong record on July 14, 2007. The Twin Galaxies referees documented the score and confirmed it. The convention organizers then returned the hardware to the Nintendo Senior Engineer for re-verification. After he confirmed the hardware remained legitimate, he mailed it to Mitchell via UPS. Mitchell submitted declarations from the referees, the organizers, and eyewitnesses at the convention to attest to these facts.

In 2010, Mitchell attempted the Donkey Kong record once more at Boomers Arcade in Florida. An original Donkey Kong arcade machine was provided to Boomers Arcade by a local arcade machine vendor. Mitchell submitted a declaration from the vendor attesting to the condition of the machine and that it contained original unmodified hardware for the world record attempt. Mitchell further submitted declarations from the Twin Galaxies referees assigned to adjudicate the Boomers score. Declarations from the manager of Boomers Arcade and the vendor's employee who delivered the Donkey Kong machine confirmed the machine contained the proper hardware and settings.

Mitchell also challenged the chain of custody of the video tapes provided to Twin Galaxies. In particular, he asserted one of the individuals who purportedly held possession of the tapes for ten years and sent it to Hall indicated in emails he had a "master plan" to "take [Mitchell] down." Mitchell also alleged the video tapes may have been altered because the version of M.A.M.E. which displays the controversial finger girder was not available in 2004, when he achieved the King of Kong score.[1] Mitchell further questioned the veracity of the video tapes, noting they did not contain his image or his voice as the video of his perfect Pac-Man score did.

*Twin Galaxies' Reply*

In reply, Twin Galaxies submitted further declarations to dispute Mitchell's assertions regarding the chain of custody issue and Twin Galaxies' failure to consider eyewitness evidence of the Disputed Scores.

Twin Galaxies submitted declarations by the individuals who provided it with the tapes attesting to the authenticity of the video tapes and that they were not altered in any way. Hall explained in a second declaration that Twin Galaxies chose not to solicit any eyewitness evidence because: (1) the King of Kong score was adjudicated by videotape and there was no evidence of a live performance; (2) Mitchell never asked Hall to interview anyone specifically; (3) no one posted any evidence on the Twin Galaxies website regarding a live performance prior to the

---

[1]     Twin Galaxies objected to this evidence below on the grounds it lacks foundation and is unreliable. It contends the trial court erroneously overruled these objections. Twin Galaxies, however, fails to provide factual or legal support for its contention of error. We therefore consider the issue waived. (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337.)

April 12, 2018 statement; and (4) evidence of the live performances was irrelevant to the dispute because the dispute related solely to whether the gameplay captured on the videotapes was from an original unmodified Donkey Kong PCB. Additional exhibits and declarations were also submitted to address other factual issues raised in Mitchell's opposition.[2]

*Mitchell's Sur-reply*

The trial court granted Mitchell's request to submit a sur-reply to address the new evidence. Mitchell argued Twin Galaxies' new evidence was irrelevant and immaterial to the anti-SLAPP motion. He also disputed the factual assertions contained in Twin Galaxies' reply declarations. In particular, he submitted declarations contradicting evidence that the video tapes relied on by Twin Galaxies originated from Mitchell, Todd Rogers (one of the referees for the Mortgage Broker score and the Boomers score), and Walter Day.

*The Trial Court's Order*

In addition to the anti-SLAPP motion, Twin Galaxies moved for an order requiring Mitchell to post an undertaking pursuant to Code of Civil Procedure section 1030, subdivision (a) because he is an out-of-state litigant and there is a reasonable possibility Twin Galaxies will obtain judgment in the action or special proceeding. (Civ. Proc. Code, § 1030.) The trial court denied the anti-SLAPP motion but granted the motion for

---

[2]    The parties submitted extensive evidence in connection with the anti-SLAPP proceedings. We set forth the evidence which we feel is necessary to our determination of this appeal. We exclude the remainder of the evidence relied on by the parties because it only serves to underscore our observation that there exist many factual disputes in this case which may not be resolved on review of an anti-SLAPP ruling.

undertaking, ordering Mitchell to post a bond in the amount of $81,225.  Twin Galaxies appealed.

## DISCUSSION

The parties agree, as do we, that Mitchell's claims for defamation and false light arise from protected activity and meet the first prong of the anti-SLAPP analysis.  We therefore focus on the second prong: whether Mitchell has shown a probability of prevailing on his claims.  Twin Galaxies contends Mitchell has not provided sufficient evidence to show the challenged statement was false or it made the statement with actual malice.  We are compelled by the standard of review, however, to conclude Mitchell has demonstrated the requisite "minimal merit" to his claims to defeat Twin Galaxies' anti-SLAPP motion.  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 (*Soukup*).)

### A. The Anti-SLAPP Statute

The Legislature enacted the anti-SLAPP statute to address the societal ills caused by meritless lawsuits filed to chill the exercise of First Amendment rights.  (Code of Civ. Proc., § 425.16, subd. (a).)  The statute accomplishes this by providing a special procedure for striking meritless, chilling claims at an early stage of litigation.  (See Code of Civ. Proc., § 425.16, subd. (b)(1); *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056.)

The anti-SLAPP statute establishes a two-step procedure to determine whether a claim should be stricken.  In the first step, the court decides whether the movant has made a threshold showing that a challenged claim arises from statutorily defined protected activity.  (*Rusheen v. Cohen, supra*, 37 Cal.4th at p. 1056.)  Once the threshold showing has been made, the burden shifts to the plaintiff to demonstrate a probability of prevailing on

12

his claims.  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.) To show a probability of prevailing, the opposing party must demonstrate the claim is legally sufficient and supported by a sufficient prima facie showing of evidence to sustain a favorable judgment if the evidence it has submitted is credited.  (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965.)

" 'In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant ([Code Civ. Proc.,] § 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.  [Citation.]' [Citations.]" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 714 (*Taus*).)  We accept as true the evidence favorable to the plaintiff.  A plaintiff must establish only that the challenged claims have minimal merit to defeat an anti-SLAPP motion.  (*Soukup, supra,* 39 Cal.4th at p. 291.)

We review the denial of an anti-SLAPP motion de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)

### B.  Defamation and False Light

"Defamation is the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or that causes special damage." (*Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 486.)  If the person defamed is a public figure, he must show, by clear and convincing evidence, that the defamatory statement was made with actual malice—that is, with knowledge that it was false or with reckless disregard of whether it was false.  (*Reader's Digest Assn. v. Superior Court*

13

(1984) 37 Cal.3d 244, 256 (*Reader's Digest*); *New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 285–286.)  Mitchell concedes he is a "limited" public figure for purposes of the anti-SLAPP proceedings who is required to show actual malice to prevail.

In evaluating whether a plaintiff has made a prima facie showing of actual malice, "we bear in mind the higher clear and convincing standard of proof." (*Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 358.)  By contrast, the law does not require a plaintiff to prove the element of falsity by clear and convincing evidence, only by a preponderance of the evidence.  (*Christian Research Institute v. Alnor* (2007) 148 Cal.App.4th 71, 76 (*Alnor*).)

" 'False light is a species of invasion of privacy, based on publicity that places a plaintiff before the public in a false light that would be highly offensive to a reasonable person, and where the defendant knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed.' " (*Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1264.)  "To establish a false light claim based on a defamatory publication, a plaintiff 'must meet the same requirements' as for a defamation claim." (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 687.)

### C.  Mitchell Made a Prima Facie Showing of Falsity

Twin Galaxies contends Mitchell failed to demonstrate its statement was false and therefore cannot show a probability of prevailing.  To meet his burden, Mitchell relies on his own declaration and others' declarations attesting to the equipment used.  We conclude Mitchell has met his burden.

14

As to the King of Kong score, Mitchell stated he achieved the score on a machine at the showroom of Arcade Game Sales. Robert Childs, the owner of Arcade Game Sales, affirmed only original unmodified hardware was used in its Donkey Kong machines. He stated, "There is no possibility that [Mitchell's] 1,047,200 score (the King of Kong 'tape') occurred on anything but original unmodified hardware . . . ." Mitchell further submitted evidence that the M.A.M.E. version that produces the girder finger found by Twin Galaxies and others on the videotape was not available until 2007, three years after the King of Kong score was achieved. This evidence would support a finding the videotape may have been altered and may be unreliable.

As to the Mortgage Brokers score, Mitchell provided a detailed description (see *ante*) of the procedure established by Day to ensure the hardware was unmodified and Mitchell did not have access to it, including that the Senior Engineer at Nintendo verified the hardware both before and after the record was achieved. In support, Mitchell submitted declarations from Day, the referees, the organizers, and other eyewitnesses at the convention.

As to the Boomers score, Mitchell submitted a declaration from the vendor of the machine he used attesting to the condition of the machine and that it contained original unmodified hardware. Declarations from the Twin Galaxies referees, the manager of Boomers Arcade, and the vendor's employee also attested to the machine's original unmodified hardware.

Twin Galaxies disputes the relevance of the evidence provided by Mitchell, asserting it focuses on the live performances rather than the videotapes on which Twin Galaxies' analysis is based. Twin Galaxies contends Mitchell misconstrues its paragraphs-long statement removing all of Mitchell's scores from its leaderboards and banning him from participating in them in the future. It argues its statement is limited to a finding that the videotape recordings of the King of Kong score and the Mortgage Broker score performances "that [are] historically used by Appellant to substantiate the score and place it in the score database was not produced by the direct feed output of an original unmodified arcade PCB." In short, Twin Galaxies confines its investigation and its statement to whether the video tapes for those two scores show anomalies, including the infamous finger girder, that cannot be produced from original Donkey Kong arcade hardware. It contends Mitchell failed to prove the falsity of that narrowly interpreted statement because Mitchell's evidence relates to the live performances only and he provides no evidence to show the gameplay recorded on the video tapes was from an original unmodified machine.

We do not agree that Twin Galaxies' statement is limited to a finding that the video recordings of the Mortgage Brokers score and the King of Kong score show they were not achieved on original unmodified Donkey Kong hardware. If Twin Galaxies' findings were limited to only those two scores, it would not have removed all of Mitchell's scores from its leaderboards, including the Boomers score, about which it did not make a definitive determination, and all other scores which were not subject to investigation. We interpret Twin Galaxies' statement as the media and Mitchell did: it accused Mitchell of cheating to achieve

16

his world record scores. Accordingly, Mitchell was not limited to the video tape evidence for those two scores.

In any case, the video tapes and the live performances purportedly reflect the same gameplay and the same games. Twin Galaxies' argument rests on an assumption the video tape recordings of the Disputed Scores override any eyewitness declarations or other evidence. It essentially seeks to have us judge the probative value of competing evidence. We decline to do so because we do not weigh the credibility or comparative probative strength of competing evidence at this stage of the proceedings. (*Taus, supra,* 40 Cal.4th at p. 714.) Given the standard of review, we conclude Mitchell has met his burden to set forth prima facie evidence of falsity.

Even if we narrowly construe the challenged statement in the manner suggested by Twin Galaxies, its argument ignores Mitchell's chain of custody evidence that raises the possibility that the video tapes do not accurately portray his gameplay for the two scores, including that the video tapes are not originals, that they do not show his face or voice, that one of the individuals who provided the videos to Hall expressed bias against Mitchell and had a motive to alter the tapes, and that the version of M.A.M.E. that produces the finger girder was not available until 2004, after the King of Kong score was achieved. Again, we may not weigh the credibility or comparative probative strength of competing evidence; we must accept as true the evidence favorable to Mitchell. (*Soukup, supra,* 39 Cal.4th at p. 291.) Twin Galaxies' evidence does not prove the truth of its statement as a matter of law such that it negates Mitchell's evidence.

### D. Mitchell Made a Prima Facie Showing of Actual Malice

Twin Galaxies also argues Mitchell failed to present sufficient evidence that it made the challenged statement with actual malice, bearing in mind the higher clear and convincing standard of proof. (*Conroy v. Spitzer* (1999) 70 Cal.App.4th 1446, 1451–1452.) We conclude Mitchell has made the requisite showing.[3]

#### 1. Legal Principles

The existence of actual malice turns on the defendant's subjective belief as to the truthfulness of the allegedly false statement. (*Reader's Digest, supra,* 37 Cal.3d at p. 257; *Alnor, supra,* 148 Cal.App.4th at pp. 84–85.) Actual malice may be proved by direct or circumstantial evidence. Factors such as failure to investigate, anger and hostility, and reliance on sources known to be unreliable or biased "may, in an appropriate case, indicate that the publisher himself had serious doubts regarding the truth of his publication." (*Reader's Digest, supra,* 37 Cal.3d at pp. 257–258.) However, any one of these factors, standing alone, may be insufficient to prove actual malice or raise a triable issue of fact. (*Id.* at p. 258.)

In *Antonovich v. Superior Court* (1991) 234 Cal.App.3d 1041, 1052–1053 (*Antonovich*), the defendant won an election to the county board of supervisors. In a later election, he accused his opponent, who had been the incumbent in the first election, of

---

[3] In its reply brief, Twin Galaxies contends the common interest privilege applies in this case. Not so. Civil Code section 47, subdivision (c), expressly states that the common interest privilege applies to communications made "without malice." Here, Mitchell made a prima facie showing of actual malice.

shredding and destroying files prior to the transfer of office because the cabinets were empty when he arrived at the office. He continued to make this accusation even after the opponent offered proof that the files existed and their respective staff members had met prior to the transition to discuss the organization of the files. There was no evidence the defendant took any steps to inquire into the truth of his opponent's statements even though the opponent offered to submit his proof for the defendant's inspection. (*Id.* at p. 1053.) The Court of Appeal found the trier of fact was entitled to conclude the defendant's " 'inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of [the subject] charges,' which amounts to a 'purposeful avoidance of the truth' " so as to support a finding of actual malice. (*Ibid.*)

### 2. Analysis

As in *Antonovich,* there is prima facie evidence of a similar decision to avoid facts that might confirm the probable falsity of the challenged statement. The record contains evidence that Hall failed to investigate facts tending to show the Disputed Scores were legitimately achieved on unmodified hardware despite Day's and Mitchell's attempts to convince him to do so.

On March 13, 2018, Day encouraged Hall to interview eyewitnesses and investigate the conclusion reached by the Senior Engineer from Nintendo. Hall refused. Instead, Hall asked, "How will you feel when I announce that Billy cheated?" Because this call occurred during the time Twin Galaxies was reportedly conducting its investigation, Day believed Hall had predetermined Mitchell's culpability.

19

Mitchell also unsuccessfully attempted to convince Hall to conduct further investigation from February to April 2018. During a February 24, 2018 telephone conversation, he urged Hall to interview Twin Galaxies personnel and eyewitnesses but Hall refused, saying he "doesn't care what anybody says." Hall again stated he "didn't care" after Mitchell described the verification of the hardware with Nintendo's Senior Engineer and that Mitchell lacked access to the hardware before and after the Mortgage Brokers score. Hall repeatedly refused to interview witnesses suggested by Mitchell in phone calls and texts in March and April 2018, stating "it doesn't matter" and he "didn't care." Hall's own statements that he "didn't care" about evidence relevant to the hardware used by Mitchell may support a finding of a " 'purposeful avoidance of the truth.' " (*Antonovich, supra,* 234 Cal.App.3d at p. 1053.)

Even when Twin Galaxies contacted one of the referees to the Mortgage Brokers and Boomers scores,[4] the questions asked did not appear to be intended to elicit the truth. The referee was asked, in a text, whether there were "any shenanigans around any of Billy Mitchell's scores?" The referee responded, "Perhaps . . . [I] mean anything is possible . . . but thats exactly why [I] called him out on things . . . just to make him prove right in front of me that there would be no questions." Hall then continued to press the referee, asking whether any of Mitchell's submitted scores were not achieved. Again, the referee equivocated, "I cannot say . . . simply because [I've] seen him play . . . ." Hall further asked whether Day would have been

---

[4] The other referee confirmed Twin Galaxies did not contact her regarding her adjudication of the Mortgage Brokers score or Boomers score.

aware of "shenanigans." The referee responded that Day "sometimes is oblivious" but would have spoken up and not defended Mitchell if he knew the scores were invalid. Hall's pointed questions do not suggest an attempt to determine the truth but an effort to direct the answer. This referee later attested to the accuracy of the Disputed Scores in his declaration in support of Mitchell's opposition to the anti-SLAPP motion.

For purposes of an anti-SLAPP motion, we accept this evidence as true. (*Soukup, supra,* 39 Cal.4th at p. 291.) Just as in *Antonovich,* Twin Galaxies failed to take any steps to inquire into the truth of Mitchell's statements even after he was provided the names of witnesses and Day confirmed the procedures under which the Disputed Scores were achieved.

The record also shows Twin Galaxies may have relied on biased sources to reach its conclusion. For example, the individual who provided Hall with copies of the videotapes for the King of Kong score and the Mortgage Brokers score indicated he had a "master plan" to "take [Mitchell] down." Mitchell also attested to the animosity of the third party investigator working on behalf of Twin Galaxies, including his publicly expressed conclusion that Mitchell was guilty before the investigation began. An inference of actual malice may be made from Twin Galaxies' failure to investigate and reliance on biased sources. (*Alnor, supra,* 148 Cal.App.4th at pp. 84–85.)

Twin Galaxies argues the evidence shows it held a good faith belief in the truth of its statement and thus did not publish with actual malice, citing to its extensive testing of the original hardware and the actual converter board used to record the Disputed Scores. Twin Galaxies further argues it held a good faith belief in the truth of its statement because three other

21

groups reached the same conclusion as it did, including Young, Chris Gleed, and Carlos Pineros.[5]  According to Twin Galaxies, the fact that it and others could not avoid the girder finger during testing was dispositive and could only lead to the conclusion reached in its statement—that the King of Kong and the Mortgage Brokers scores "**were not produced by the direct feed output of an original unmodified Donkey Kong Arcade PCB.**  [Emphasis in original.]"

As a result, Twin Galaxies excuses its failure to investigate Mitchell's evidence on the ground the witnesses to the live performance have no bearing on the technical nature of Young's dispute claim.  According to Twin Galaxies, the only issue in dispute is whether the videotape recordings of the King of Kong score and the Mortgage Brokers score could have come from original unmodified Donkey Kong hardware.  Neither the eyewitness testimony nor the Senior Engineer's verification was relevant to that precise issue.

We reject this narrow interpretation of the challenged statement for the same reasons discussed above.  Again, Twin Galaxies relies on competing evidence to argue a lack of actual malice.  Again, we conclude we may not weigh the credibility or comparative probative strength of competing evidence.  (*Taus, supra,* 40 Cal.4th at p. 714.)  Even bearing in mind the higher clear and convincing standard of proof for actual malice, our review is limited to whether Twin Galaxies' evidence

---

[5]  The parties dispute whether Chris Gleed worked on behalf of Twin Galaxies and whether Carlos Pineros worked on behalf of Mitchell.  This factual dispute does not affect our analysis because we do " 'not weigh the credibility or comparative probative strength of competing evidence . . . .' " (*Taus, supra,* 40 Cal.4th at p. 714.)

22

demonstrates Mitchell cannot prevail as a matter of law. (*Alnor*, *supra*, 148 Cal.App.4th at p. 84.) We conclude the motion was properly denied because Twin Galaxies' evidence does not defeat as a matter of law Mitchell's prima facie evidence in support of his claims.

Neither are we persuaded by the cases cited by Twin Galaxies—*Annette F. v. Sharon S.* (2004) 119 Cal.App.4th 1146 (*Annette F.*) and *Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260 (*Rosenaur*). In both cases, the defendants were not alerted to any potential falsity in their statements prior to publication. In *Annette F.,* the plaintiff introduced no evidence to contradict the defendant's declaration that she held a good faith belief in the truthfulness of her statement. (*Annette F.,* at p. 1169.) In *Rosenaur,* the defendants relied in good faith on public records to make their statement and were not aware of any information that could contradict what was contained in the public records. (*Rosenaur,* at pp. 272, 276.) Here, there is ample evidence that Twin Galaxies was alerted to potential contradictory facts.

Because we conclude Mitchell's defamation claim survives the anti-SLAPP motion, his false light claim stands as well. (*Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1385, fn. 13 [false light claim "stands or falls on whether it meets the same requirements as the defamation cause of action."].)

23

## DISPOSITION

The order denying Twin Galaxies' anti-SLAPP motion is affirmed.  Mitchell is awarded his costs on appeal.

**CERTIFIED FOR PUBLICATION**


OHTA, J.*

We Concur:


GRIMES, Acting P. J.


STRATTON, J.

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.